## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**NATHAN BARBIERI** and **NOLAN RADOMSKI,**

               Plaintiffs,

vs.

**THOMAS JEITSCHKO**, Interim
Provost and Executive Vice President
for Academic Affairs of Michigan State
University, in his official capacity;
**JUDITH WHIPPLE**, Interim Dean of
the Michigan State University Broad
College of Business, in her official
capacity; **AMY WISNER**, Professor of
Marketing at the Michigan State
University Broad College of Business,
in her official and individual
capacities,

               Defendants.

Case No. 1:23-cv-00525-PLM-RSK
Hon. Paul L. Maloney

### DEFENDANT WISNER'S RESPONSE BRIEF TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION—ORAL ARGUMENT REQUESTED

## INTRODUCTION

Plaintiffs do not meet the standard required for a preliminary injunction. A preliminary injunction is an extraordinary remedy that should be reserved for Plaintiffs suffering immediate and continuous harm. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Plaintiffs are not suffering any harm, nor have they ever suffered the harm alleged in the complaint. The Rebellion Community ("the Rebellion") is not politically aligned and was created as a space for individuals to communicate past their differences in a professional environment. Defendant Wisner ("Wisner") did not donate any money from Plaintiffs' membership fees for the Rebellion to Planned Parenthood. (Exhibit A, Affidavit of Amy Wisner). Wisner will show this through discovery.

All of the students' membership fees to the Rebellion were used for app development, upkeep, and content, as stated in the Rebellion agreement. Regardless, Plaintiffs received their money back from Michigan State University ("the University") and Wisner is no longer a Professor at the University.  Plaintiffs will not carry their burden of proving that the circumstances clearly demand a preliminary injunction. Therefore, this Court should deny Plaintiffs' request for a preliminary injunction.

## FACTUAL BACKGROUND

Wisner taught MKT250, a business communications course at Broad College of Business at the University. (ECF No. 1-6, PageID.58). In spring 2023, Wisner requested her students purchase a membership to the Rebellion. (*Id.* at PageID.59). Wisner

developed the Rebellion and it acted as a replacement to the usual textbook the students were required to purchase for the course. (*Id.* PageID.60). The University permitted Wisner to require a platform such as the Rebellion in their "Code of Teaching Responsibility," where professors were allowed to determine course content and to designate materials required for a course. (Compl., ¶48 ECF No. 1, PageID.10).

The goal of the Rebellion was for students to learn to communicate across their own differences in the workplace. The Rebellion cost $99.00 for a year subscription.[1]

Prior to obtaining access to the Rebellion, students needed to read and agree to the Rebellion's Terms of Service. (Exhibit B, The Rebellion's Terms of Service). Significantly, the waiver consisted of the following language:

Limitation of Liability

a) We will not be liable for any damages of any kind arising from the use of our virtual learning community, including, but not limited to, direct, indirect, incidental, punitive, and consequential damages.

(b) We will not be liable for any damages resulting from loss of use, data, or profits, or from any unauthorized access to or alteration of your transmissions or data.

Indemnification

You agree to indemnify and hold us, and our affiliates, officers, agents, and employees, harmless from any claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of your use of our virtual learning community, your violation of these Terms of Service, or your violation of any rights of another.[2]

---

[1] In Wisner's first lecture of the course, she told students if they had financial troubles, they could reach out to her and she would waive the subscription fee. Wisner waived the membership fee for a couple of students.

[2] The Rebellion required subscribers to read and agree the terms of service for the Circle as well. The Circle was the business that created and addressed any technological issues on the Rebellion app. The language of the Circle's terms of service also included a limit of liability.

Plaintiffs were enrolled in Wisner's spring 2023 course and agreed to the Rebellion's Terms of Service. Plaintiffs are both over the age of 18 and presumably have the capacity to understand and agree to a contract, they must have done so when initiating the current lawsuit. The Rebellion's Terms of Service are binding on Plaintiffs.

Significantly, Plaintiffs did not express concern regarding the Rebellion at the beginning of the semester in spring 2023. The Plaintiffs are misleading this Court by claiming the website pages they attached to their complaint are the same pages they viewed when signing up for the Rebellion.[3] Most of the exhibits attached to the complaint took place either before or after Plaintiffs were enrolled in Wisner's course. As examples: on May 27, 2021, Wisner gave a "Tedx Talk" expressing her personal life experiences. (Compl., ¶ 41 ECF No. 1, PageID.9). On June 19, 2022, Wisner posted to her own personal Instagram account: "cancelthepatriarchynow" a promotion regarding her anticipated book. (ECF No. 1-4, PageID.54). On June 29, 2022, Wisner posted on her personal twitter account about her upcoming book and co-author. (ECF No. 1-5, PageID.56). On August 16, 2022, Wisner initiated a GoFundMe page to raise money to buy an RV so she could travel and facilitate productive conversations. (ECF No.1-1, PageID.39-44).[4] On May 1, 2023, Wisner posted on TikTok that she purchased an RV. (ECF No. 1-9, PageID.74). All dates fall outside the timeframe Plaintiffs had Wisner as a professor.

---

[3] If the exhibits were the same pages the Plaintiffs viewed when subscribing to the Rebellion, the question is why did the Plaintiffs' continue with the transaction?

[4] Wisner did not buy the RV until after she was terminated by the University and used the funds from the sale of her home to purchase the RV.

Exhibit B of Plaintiffs' Complaint is the webpage for Wisner's other site called "cancelthepatriarchy.org." (ECF No. 1-2, PageID. 46-50).[5] The site is not the platform students were enrolled in but does link to the Rebellion and promote the private community as a space for authentic communication.

The course schedule for the Rebellion consisted of watching videos, answering prompts, and listening to speakers that helped students develop their communication skills in a business setting. (Exhibit C, MKT 250 Weekly Schedule).[6] Students used the Rebellion to access the materials for the course on an app platform. (ECF No. 1-10, PageID.77).[7] Leading up to spring 2023, at the request of the University, Wisner revised the syllabus to meet the University's concerns regarding student satisfaction with the course. (ECF No. 1-6, PageID.58). Pursuant to the University's policies, Wisner continued to use the Rebellion because she believed it was a revolutionary platform to help students look inward to identify their values and communicate with their peers both inside and outside of the organization that may have different values. Specifically, Wisner explained to the students: "The Rebellion is designed to create a culture of critical thinking, self-awareness, and genuine connection. We will use this space to review content and practice communication skills." (Exhibit D, "How will we use this space?" Lesson 3 of 26 on the Rebellion).

Despite all of Wisner's attempts to please her students and the University, it was not enough. During the semester, students discovered Wisner had posted on

---

[5] Wisner promotes her separate site "Cancel the Patriarchy" and her book "The Rebellion: Transforming Society with Radical Authenticity."

[6] The MKT 250 Weekly Schedule is a detailed accounting of the expectations Wisner presented for the semester and her students. All assignments, videos, readings are centered on communication, critical thinking, and self-awareness.

[7] The app was developed specifically for the students' convenience and the development cost of the app was substantial.

Facebook a post that was contrary to the goals of the Rebellion. (ECF No. 1-8, PageID.72). Wisner stated 100% of the proceeds from The Rebellion would be donated to Planned Parenthood. *Id.* The post was dated June 25, 2022. *Id.* Six months prior to the spring 2023 course beginning. Wisner's post was immediately following the *Dobbs v. Jackson Women's Health Organization*[8] Decision which overturned *Roe v. Wade* on June 24, 2022. Wisner reacted to the *Dobbs* decision on her personal account yet quickly realized this was not the direction she wanted to take the Rebellion. Wisner never donated any student membership fees to Planned Parenthood nor any other political organization. (Exhibit A, Affidavit of Amy Wisner). In fact, Planned Parenthood has record of *only* one donation from Wisner for $45.00 on October 3, 2021.  (Exhibit E, Wisner Giving to Planned Parenthood). The donation occurred a year and a half before Plaintiffs were asked to pay for the Rebellion. The students' money only went to the Rebellion's operational costs, as disclosed to the students in MKT 250 multiple times.

After some students expressed concerns about the Rebellion, Wisner used one of her lecture periods to address all of the students concerns regarding the course and the Rebellion. On February 6, 2023, Wisner explicitly told those in attendance of her lecture that she did not donate any of the membership fees to Planned Parenthood and/or charity. Additionally, Wisner disclosed the specifics of the Rebellion financials to the University and provided recordings of the lectures where Wisner explained the financials and purpose of the Rebellion to her students. Wisner even posed an opportunity for students to receive a refund if they felt they did not receive full value

---

[8] 597 U.S. __; 142 S. Ct. 2228 (2022) (holding "abortion presents a profound moral question, and the Constitution does not prohibit the citizens of each state from regulating or prohibiting abortion").

from their Rebellion subscription. 17 Students took advantage of this opportunity and received their subscription fee back from the Rebellion. (Exhibit F, List of Refunded Fees to Students).

In response to the Planned Parenthood accusation against Wisner, a Young America's Foundation article surfaced on February 10, 2023 regarding the unfounded rumors surrounding the Rebellion.[9] Up to this point, the University failed to adequately investigate the alleged accusations and expressed frustration with Wisner for urging her students to challenge conventional learning environments of the past. Ultimately, the University placed Wisner on suspension and subsequently terminated her on March 1, 2023. (ECF No. 14, PageID.171) (Exhibit G, Separation Agreement). Notably, the University did not cite alleged donations to Planned Parenthood as Wisner's reason for termination. (ECF No. 14, PageID.171).[10] But the University replaced Wisner with a substitute professor and refunded all the students in the course their $99.00 membership fee to their student account. (ECF No. 1-13, PageID.85). Plaintiffs received this student credit.

The accusations against Wisner received media attention and resulted in threats against Wisner and her family.[11] Following Wisner's termination, she sold her house and bought an RV. Wisner did not use any of the funds from the students'

---

[9]  https://www.yaf.org/news/msu-professor-forces-students-to-purchase-annual-subscription-to-her-own-website-claims-proceeds-will-be-donated-to-planned-parenthood/ (last accessed August 1, 2023) (alleging forced subscription to her own website and funds donated to Planned Parenthood); https://stream.org/professor-under-review-after-allegedly-forcing-students-to-buy-subscription-that-donates-to-planned-parenthood/ (last accessed August 1, 2023).

[10] MSU Defendants did not recognize alleged distribution of funds to political organizations as the reason for Wisner's termination nor did MSU Defendants acknowledge the validity of these accusations in their Response in Opposition to Plaintiff's Motion for Preliminary Injunction.

[11]  https://www.yaf.org/news/leftist-msu-professor-walks-away-with-120k-in-forced-subscription-fees-university-foots-reimbursement-bill/ (last accessed August 1, 2023).

membership fees to the Rebellion to purchase the RV, she used the proceeds from the sale of her home.

Plaintiffs received the credit back from the University. Plaintiffs could have requested a refund from Wisner, yet they opted not to. Plaintiffs do not have Wisner as a professor this upcoming semester because she is no longer employed by the University. Plaintiffs did not have their money donated to Planned Parenthood. Plaintiffs did not have their money donated to any political cause or organization attempting to further speech contrary to their own. Despite Plaintiffs' creative attempts to mislead this Court about the goals of Wisner, the relied upon documents in the complaint stem from old posts from Wisner's personal social media accounts and the money from the Spring 2023 MKT250 class was directed only to operational costs of the Rebellion, a space for respectful academic discourse to prepare students for the professional world. Since initiation of this lawsuit, the Rebellion is not active.

Plaintiffs request the money Wisner allegedly took for purposes of financing political expression and an account of funds for The Rebellion. Since Wisner is not employed nor defended by the University, there is no discussion regarding the University's applicable policies.

## LEGAL STANDARD

For Plaintiffs to prevail on their request for preliminary injunction, there are four factors for this Court to review: "(1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest." *D.T. v.*

*Sumner Cnty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019). Plaintiffs will fail to establish all four factors.

ANALYSIS

## I. Plaintiffs will not have success on the merits.

The preliminary question is whether a movant is likely to succeed on the merits. Plaintiffs allege they will be successful on the merits because Wisner violated their First Amendment right to be free from compelled speech and association by donating funds from their membership to Planned Parenthood.  But to allege these violations, Plaintiffs must first meet the requirements of 42 U.S.C. § 1983 claim. A § 1983 claim allows individuals to bring suit against a state actor who deprives them of a federal constitutional right without due process of law. *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013) (citing *Ziegler v. Aukerman*, 512 F.3d 777, 781 (6th Cir. 2008)). The Sixth Circuit recognizes certain elements a plaintiff must prove to succeed on a § 1983 claim: (1)"that he was deprived of a right secured by the constitution or laws of the United States, [and] (2) that the deprivation was caused by a person acting under color of law." *Webb v. U.S.*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 595 (6th Cir. 2012); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001)).  Plaintiffs will not meet the standard of a § 1983 claim, there was no constitutional violation, Plaintiffs do not have standing, and the issue is moot.

## A. Wisner did not deprive Plaintiffs of their constitutional right.

As required under a § 1983 claim, Plaintiffs assert a First Amendment violation of their right to speak and to refrain from speaking. (Compl., ¶ 152, PageID.29). Additionally, Plaintiffs claim violation of their First Amendment right to associate and

to refrain from association. (*Id.* ¶ 165, PageID.31). Plaintiffs' arguments rely on the notion that Wisner took money from the Rebellion membership fees and donated it to a political third-party organization, Planned Parenthood. However, Wisner exclusively used the subscription fees from students for operational costs of the Rebellion.

As extensively described by Plaintiffs, the First Amendment protects an individual's "right to speak freely and to refrain from speaking…." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Additionally, the First Amendment protects "[t]he right to eschew association for expressive purposes…." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018). Wisner does not challenge the First Amendment's jurisprudence but questions its applicability here. None of Wisner's students were at risk of these violations by their payment for and use of the Rebellion in the course.

First, Wisner only contributed Plaintiffs' membership fees to the Rebellion. An essential element to assess potential unconstitutional compelled speech is whether the Plaintiffs "are closely linked with the expression in a way that makes them appear to endorse the government message." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 565, n. 8 (2005) (holding there was no violation of the First Amendment where there was no evidence that the speech was attributed to the plaintiffs). Hypothetically, even if Wisner did donate to Planned Parenthood (she did not), Plaintiffs' constitutional right is not violated because there is no record linking an alleged donation to their name. Therefore, no observer would "attribute, or actually have attributed" the alleged

speech and/or donation to Plaintiffs. *New Doe Child #1 v. Cong. of United States*, 891 F.3d 578, 593 (6th Cir. 2018).

Even assessing the post from June 25, 2022, where Wisner states "Literally 100% of member of fees are donated to planned parenthood;" she does not identify the members of the Rebellion and does not even mention the University. (ECF No. 1-12, PageID.83). There is no way to attribute Wisner's statement regarding Planned Parenthood to the Plaintiffs, especially considering the statement was made six months prior to Plaintiffs enrollment and no money was donated to Planned Parenthood. *See New Doe Child #1*, 891 F.3d at 593. Further, the Plaintiffs participated on the Rebellion as a private community exclusively for students in the MKT 250 course at MSU. (ECF No. 1-6, PageID.59). No observers could have attributed Wisner's statement and alleged actions regarding Planned Parenthood to Plaintiffs. *See New Doe Child #1*, 891 F.3d at 593.

Second, the Rebellion is not a forum for political action nor political expression. The Plaintiffs even likened the space to Desire to Learn (D2L), a platform the Plaintiffs and the University find acceptable as a forum to communicate between professors and students. (ECF No. 3, PageID.100); (Compl., ¶ 86. ECF No. 1, PageID.17) ("Plaintiffs were originally frustrated by having to pay the $99.00 membership fee because joining the group seemed unnecessary and duplicative. The University already has an online platform for course materials called [D2L]. Most professors use D2L for their

courses…"). If no money was funneled to a political organization and the Rebellion is "duplicative" to D2L, then there can be no constitutional violation.[12]

The Rebellion assignments and prompts students completed throughout the beginning of the semester revolve around communication, critical thinking, and self-awareness. (Exhibit C, MKT 250 Weekly Schedule). It is evident, the Plaintiffs and the University failed to have reviewed the assignments and course schedule before taking action against Wisner. The only request made by Wisner was for students to participate in communicating their ideas and beliefs with their group on the Rebellion. There was no requirement to promote a certain view over another through use of the Rebellion.

Through the course of discovery, Wisner will successfully defend her position and demonstrate to this Court there was no constitutional violation of Plaintiffs' First Amendment rights. Plaintiffs, like all other plaintiffs initiating a lawsuit, believe they will be successful on the merits. Yet, Plaintiffs ignore the reality of the situation by relying on statements made outside the timeframe they were Wisner's students. Even if Wisner did donate to Planned Parenthood with Plaintiffs' funds (she did not), Plaintiffs have no constitutional violation because the "speech" cannot be attributed to them. There was no constitutional violation regardless of the way the Plaintiffs attempt to spin the facts.  Plaintiffs will be unable to show Wisner violated their constitutional rights.

---

[12] The rebellion was not identical to D2L, it was more technologically innovative. Wisner planned to use the more advanced functions of the Rebellion during the second half of the semester. Unfortunately, the University terminated Wisner prior to her being able to exercise the platform's capabilities for more sophisticated communication.

**B. Wisner was not acting under color of law when she donated to Planned Parenthood.**

Next, Plaintiffs must prove that "a person acting under color of law" caused the deprivation. *Webb*, 789 F.3d at 659. To act under color of state law requires a defendant to have exercised the power "possessed by virtue of state law and made possible only because the wrongdoer is clothed by the authority of state law." *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Here, as previously discussed, Plaintiffs direct this Court's attention to instances where Wisner is acting *outside* the color of state law. Wisner's comments in the summer regarding Planned Parenthood donations, her GoFundMe page, the pursuit of publishing her own book, and the "Tedx Talk" regarding her personal life experiences were all her exercising her freedom of speech outside the confines of her employment with the University. The only power Wisner rendered was when she requested students to enroll in the Rebellion as part of MKT 250. A valid exercise of control granted by the University's administrators and policies over her students as an alternative for Plaintiffs paying for a textbook and/or TopHat, another virtual platform.

Further, Wisner's only donation to Planned Parenthood was on October 3, 2021 in her individual capacity with her own money. (Exhibit A, Affidavit of Amy Wisner); (Exhibit E, Wisner Giving to Planned Parenthood). Wisner's actions regarding Planned Parenthood in 2021 were not taken under the guise of power the University provided to her as a professor. Plaintiffs' disagreement with Wisner's beliefs and

- 13 -

actions outside of her capacity as a professor at the University are irrelevant to the merits of their claims. Plaintiffs fail to establish their § 1983 claims against Wisner.

### C. Plaintiffs do not have standing and issues are moot.

First, for standing, Plaintiffs must survive by establishing (1) the plaintiffs suffered an "injury in fact," (2) there is a causal connection between the injury and the conduct complained of, and (3) it must be "likely" that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildfire*, 504 U.S. 555, 560-61 (1992).[13] Plaintiffs fail on all three elements, but most notably on the third: redressability.

Redressability requires the Plaintiffs to show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *R. K. by and through J. K. v. Lee*, 53 F.4th 995, 1001 (6th Cir. 2022) (quoting *Lujan*, 504 U.S. at 561)). All of Plaintiffs' "injuries" are speculative. Even if this Court found in favor of Plaintiffs for their constitutional claims, they already received their $99.00 back from the University. Even if this Court required Wisner to return $99.00, it would not be the same $99.00 bills they used to pay for the use of the site. Even if this Court found the Rebellion was an unconstitutional platform to require students to use, Plaintiffs have no risk of being required to use it in the future because Wisner is not a professor at the University. A decision in favor of Plaintiffs and granting of injunctive relief will not redress the alleged injury. Plaintiffs have no standing.

Second, Plaintiffs' alleged constitutional violations are moot and will be dismissed. The Constitution requires a "claim must not become moot prior to the court's decision on the merits." *Powell v. McCormack*, 395 U. S. 486, 496 (1969).

---

[13] Wisner echoes the arguments made by MSU Defendants regarding standing and mootness. *See* ECF No. 14, PageID.154-57.

Ultimately, the "test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997)). The University refunded Plaintiffs their $99.00 back. The Rebellion's student membership fees did not go to Planned Parenthood. Wisner is no longer a professor at the University. These facts coupled with the reality that there was no constitutional violation makes this matter moot. There is no relief that makes a difference for the Plaintiffs because every avenue has already been addressed by either Wisner or the University.

Even though no one factor is controlling, a finding that there is "simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)). Plaintiffs will not be successful on the merits because there is no constitutional violation, Wisner was not acting under the color of law, and they have no standing and the alleged "issue" is moot. Plaintiffs' request for preliminary injunction should be denied for lack of success on the merits.

## II.  Plaintiffs have not and will not suffer irreparable harm.

Plaintiffs made no showing of irreparable harm from Wisner's actions. The District Court is permitted to weigh the four factors against each other, however, irreparable harm is an "indispensable" requirement and without immediate harm to Plaintiffs, there is no need to grant relief *now* as opposed to at the end of lawsuit. *Sumner Cnty. Sch.*, 942 F.3d at 326 (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). When First Amendment violations are at play, the

irreparable harm factor merges with the likelihood of success on the merits. *McNeilly v. Land*, 684 F.3d 611, 620-21 (6th Cir. 2012). Loss of First Amendment right constitutes an irreparable injury. So it follows that if Plaintiffs cannot show likelihood of success on the merits, they have failed to show irreparable harm. *Id.* Plaintiffs are not able to demonstrate they are likely to succeed on the merits as previously discussed, so there is no irreparable harm.

Plaintiffs did not suffer any financial harm because the Rebellion was not a political site nor did the money devoted to the subscription go to Planned Parenthood. Paying for the Rebellion was the same as students paying for a textbook authored by their professor according to the University's policies. Even if there was a constitutional violation, the alleged financial harm suffered by Plaintiffs has been redressed. Plaintiffs acknowledged the $99.00 was credited to their MSU account. (Compl., ECF No 1, ¶ 117, 118, PageID.23; ECF No. 3, PageID.112-13). To request the exact monies back used to pay for their Rebellion subscription is illogical. When one buys an item from a store, returns it, and receives store credit; the individual does not have grounds for a lawsuit to receive damages because they did not receive the exact dollar bills initially used to buy a product from the store.

Furthermore, Plaintiffs even had the opportunity to get an additional $99.00 directly back from the Rebellion as some of their classmates did. (Exhibit F, List of Refunded Fees to Students). Plaintiffs did not exercise this option. Regardless, Wisner used all the membership fees to pay for operational costs of the platform.

The self-proclaimed righteousness of Plaintiffs' cause is not enough to satisfy the element of irreparable harm. Plaintiffs claim there is an ongoing constitutional

harm because Wisner "forced" Plaintiffs to align with speech through use of their money that is contrary to their religious beliefs. (Compl., ECF No. 1, PageID.2). But forcing political speech and specific ideologies is the antithesis of the Rebellion's goal. (Exhibit D, "How will we use this space?" Lesson 3 of 26 on the Rebellion). The Rebellion revolved around self-awareness and critical thinking. *Id.* Alleging irreparable harm for being expected to engage in the education system is a concerning approach to one's own future. Plaintiffs unquestionably failed to demonstrate that without a preliminary injunction they would suffer irreparable harm so this Court should deny their request for preliminary injunction.

### III. The balance of equities favors Wisner.

Wisner is no longer a professor at the University. Wisner did not donate students' fees to Planned Parenthood. The Rebellion is not currently functional. The students received their fees back from the University and could have directly requested them back from Wisner and the Rebellion. Between the University and Wisner's actions, there is no harm at all to Plaintiffs. Forcing Wisner to return additional money to the students as a punishment for exercising her freedom of speech outside of her position would be inequitable and unfairly compensate Plaintiffs.

Further, Plaintiffs will not be successful on the merits of demonstrating a constitutional violation so they do not receive the deference from the court for vindicating a constitutional right. *See Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). The balance of equities clearly favors Wisner.

**IV. A preliminary injunction does not serve the public interest.**

It is beyond dispute that jeopardizing students' education is against the public interest. Plaintiffs argue Wisner is violating students' constitutional rights. Wisner is not violating constitutional rights but was challenging her class to think critically and identify their own values. Currently, Wisner is not a professor and the Rebellion is not functional.  A preliminary injunction is not appropriate here because it would deter professors and educators from adequately preparing their students for the professional world and is a threat to the education system. A preliminary injunction is inappropriate.

## CONCLUSION

There are no grounds for this Court to grant Plaintiffs' request for preliminary injunction which requires the utmost "caution, deliberation, and sound discretion" *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18*, 471 F.2d 872, 876 (6th Cir. 1972). The issue is not whether Plaintiffs will be successful on the merits. The issue is whether Plaintiffs meet the robust standard for a preliminary injunction. Plaintiffs clearly failed to meet their burden to show the circumstances warrant the extraordinary remedy from this Court for a preliminary injunction. Plaintiffs suffered no irreparable harm and will not be successful on the merits because there is no constitutional violation, Wisner did not act under color of the law, Plaintiffs have no standing, and alleged issue is moot. Plaintiffs' money went to a constitutional educational resource and even so, they were credited back the "financial harm" they allegedly suffered. Wisner is not a professor at the University. Wisner respectfully

requests this Court to deny Plaintiffs' request for preliminary injunction as it relates to

Wisner and her finances because there is no irreparable harm.

Respectfully submitted,

COLLINS EINHORN FARRELL PC

BY:    *s/ Deborah A. Lujan*
DEBORAH A. LUJAN (P46990)
HANNAH R. BREFELD (P86204)
Attorneys for Defendant
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141

Dated: August 2, 2023

## CERTIFICATE OF COMPLIANCE

As required under LCivR 7.2(b)(i), I hereby certify that this brief includes 4,828 words including headings, footnotes, citations and quotations and not including the case caption, cover sheets, any table of contents, any table of authorities, the signature block, exhibits, and affidavits. This word count was generated by Microsoft Word 2016, the processing software utilized to draft this motion and brief.

By: *s/ Deborah A. Lujan*
DEBORAH A. LUJAN (P46990)